UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCUS MCRAE, | Civil Action No.  21-3565 (FLW) |
| Plaintiff, | |
| v. | MEMORANDUM & ORDER |
| WARDEN CHARLES ELLIS, et al., | |
| Defendants. | |

Plaintiff Marcus Mcrae, currently confined Mercer County Correctional Center, seeks to bring this civil action *in forma pauperis*, without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983.  Plaintiff has resubmitted his IFP application with the required certification.  *See* ECF Nos. 1-1, 1-2, 3.  At this time, the Court grants the IFP application.  *See* 28 U.S.C. § 1915.  Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

Plaintiff has sued Warden Charles Ellis, CFG Health Services ("CFG"), and County Executive Brian M. Hughes for alleged violations of his constitutional rights while confined at Mercer County Correctional Center ("MCCC").

As to Warden Ellis, Plaintiff alleges that Ellis is aware of the dangers presented by COVID-19 but has failed to adhere to Centers for Disease Control ("CDC") guidelines for social distancing, "mask exchange," and testing for COVID-19.  *See* Complaint at 7.

1

Although new inmates at MCCC are quarantined for 14 days, the new inmates are not tested for COVID-19 during that initial 14-day quarantine and, therefore, could spread COVID-19 to other inmates as asymptomatic carriers. *See id.* at 10. MCCC staff also does not enforce social distancing and the jail is overcrowded due to dorm-style residences. *Id.* MCCC also lacks a "coordinated" mask exchange, resulting in inmates using the same masks for extended periods. *Id.* Plaintiff also alleges that disinfectant products are not readily available to inmates. *See id.*

Interspersed with his allegations about the insufficiency of COVID-19 precautions, Plaintiff lists "no running shower for months," but he does not provide any additional facts about the lack of running showers. Complaint at 7. Plaintiff also alleges the communal bathroom areas are not maintained and "you can find 1 1/2 inch high standing water contaminated by sewage and urine in the urineal [sic]," which allegedly weakens the immune system. *Id.* Plaintiff also alleges that the prison lacks regular laundry service and inmates wear the same pieces of clothing for extended periods, and there is a lack of space to hang hand-washed clothing.[1] *Id.* at 11. Plaintiff also complains of water dripping over the bed from the roof for an unspecified period of time. *Id.*

In addition to his claims about the conditions of confinement at MCCC, Plaintiff also alleges generally that MCCC staff members selectively provide and answer some grievances and ignore others, purportedly in retaliation for inmates' complaints about their conditions of confinement.[2] *Id.* at 10.

---

[1] Plaintiff also states that inmates only receive one pair of underwear, one jumper, and one pair of socks. *See id.* It is unclear what inmate would wear while these articles of clothing are being laundered or handwashed.

[2] Prison officials may be held liable for retaliatory conduct that was motivated "'in substantial part by a desire to punish [the prisoner] for exercise of a constitutional right,'" *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000) (citation omitted), such as filing lawsuits and grievances related to the conditions of incarceration. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). To succeed on his retaliation claim, Plaintiff must allege that he was engaged in constitutionally protected conduct, that that prison officials caused him to suffer "adverse

2

Plaintiff alleges that Brian Hughes is responsible for managing MCCC and for the health and safety violations at MCCC. Plaintiff has written to Brian Hughes about the conditions at MCCC and has not received a response. *See id.* at 5.

Plaintiff also alleges that CFG has failed to provide medical and mental health treatment for COVID-19, answer sick call slips, and provide information about COVID-19. *See id.* at 4, 6.

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted). Conclusory allegations do not suffice. *See id.* Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Since Plaintiff is a pretrial detainee, the Fourteenth Amendment governs his claims. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

---

action," and that there is a causal connection between the exercise of his constitutional rights and the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The Court does not construe Plaintiff to allege First Amendment retaliation claims against any of the named Defendants, and he does not provide any facts showing that prison officials retaliated against him personally, as required to state a claim under § 1983.

3

To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542. Additionally, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

To satisfy the subjective component of the analysis, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); see also *Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards*

*v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Plaintiff appears to allege that inadequacies in the COVID-19 protocols at MCCC violate his constitutional rights.  In *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020), immigration detainees alleged that due to their ages and medical conditions, their confinement at county jails during the COVID-19 pandemic amounted to punishment and/or deliberate indifference to their serious medical needs.  Although the Third Circuit agreed that the detainees' particular vulnerabilities could be assessed in determining whether their conditions amount to punishment, the court rejected the detainee's arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate the detainees' risk of exposure in order to comply with constitutional mandates.  *See* 972 F.3d at 329.  The Third Circuit also warned against using "ideal" responses to COVID-19, such as keeping six feet of separation (*i.e.* social distancing), "as the sine qua non of constitutional detention," even for individuals at higher risk of serious harm if they contract COVID-19.  *See id.* at 327.

Here, although Plaintiff complains about less than ideal protocols for social distancing, testing, masking, and sanitation, he provides no facts to suggest that he has a particular vulnerability to COVID-19, such that his detention under these less than ideal conditions amounts to punishment.  He also fails to provide any facts to suggest that Ellis and/or Hughes acted with deliberate indifference to his particular vulnerability to COVID-19.  As such, his Fourteenth Amendment claims regarding alleged inadequacies in the COVID-19 protocols are dismissed without prejudice as to both Defendants.

Plaintiff may be attempting to allege that Ellis and Hughes created deficient policies or protocols to prevent the transmission of COVID-19 at MCCC.  Policy claims also have specific pleading requirements.  "[T]o hold a supervisor liable…for their deficient policies…the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), rev'd on other grounds by *Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)).

Even if the Court were to find that Plaintiff sufficiently alleged that Ellis and/or Hughes created deficient COVID-19 policies or protocols, Plaintiff has not provided any facts showing that they knew that these policies or protocols created an unreasonable risk of harm to Plaintiff or to inmates generally, or that Plaintiff suffered any injuries due to the allegedly deficient COVID-19 policies/protocols at MCCC.  As such, the § 1983 claims based on the allegedly deficient COVID-19 policies/protocols at MCCC are also dismissed without prejudice.

Plaintiff also complains about other conditions at MCCC, such as standing water/sewage in a communal urinal, a lack of "running showers," a lack of coordinated laundry service, a lack of sufficient cleaning supplies, and a leaking roof.  The Third Circuit has held that exposure to human waste can violate the Fourteenth Amendment, *Martin v. Gearhart*, 712 F. App'x. 179, 187 (3d Cir. 2017) (finding, however, that exposures of "limited severity and duration" do not violate the Constitution).  Here, Plaintiff's allegations that there is standing human waste in the urinals

appears to be of limited severity, and Plaintiff has not provided sufficient facts about the severity and duration of the other deprivations, such that the Court could find that these conditions collectively amount to punishment.[3]

Moreover, even if Plaintiff could satisfy the objective prong, he fails to satisfy the subjective prong of the deliberate indifference test. To do so, Plaintiff would need to provide facts showing that Ellis and/or Hughes were on notice of the unsanitary conditions and failed to take corrective action. It is well-settled that *respondeat superior* is not a basis for section 1983 liability for supervisors, such as Ellis and Hughes. As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved....") (internal quotations, citations omitted); *Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim).

In this regard, Plaintiff alleges that he wrote to Hughes regarding the conditions of confinement at MCCC, but Hughes failed to respond to his grievances. The failure to review or respond to a grievance is insufficient to show personal involvement. *Mincy v. Chmielsewski*, 508

---

[3] Plaintiff provides few facts about the other allegedly unsanitary conditions at MCCC. For instance, the Court cannot discern whether Plaintiff was forced to spend significant time near the urinal(s) that had standing waste in it, whether some or <u>all</u> showers were broken for months at MCCC, or the severity of the leak and its duration. If Plaintiff chooses to submit an Amended Complaint, he is free to provide additional facts about the severity and length of time he endured unsanitary conditions at MCCC.

7

F. App'x. 99, 104 (3d Cir. 2013) (An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.").

For these reasons, the Fourteenth Amendment deliberate indifference claims against Ellis and Hughes regarding the allegedly unsanitary conditions are dismissed without prejudice for failure to state a claim for relief.

Finally, Plaintiff has sued CFG for alleged failures in connection with the provision of medical care and mental healthcare at MCCC. The Constitution requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). As a pretrial detainee, Plaintiff's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment. *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). In order to state a claim for relief, Plaintiff must show a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *See Natale*, 318 F.3d at 582 (citation omitted). Entities like CFG, which provide healthcare services for to the County pursuant to a contract, "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability." *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, to state a claim for relief, Plaintiff must provide facts showing that CFG had a relevant policy or custom, and that the policy or custom caused the constitutional violation he alleges. *See id.* (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

To proceed on a *Monell* theory, a plaintiff must identify a specific policy or custom of the entity that caused the constitutional violation at issue and must typically allege a pattern of similar

past conduct to show that the entity was on notice that the policy or custom caused the alleged violation.  *See, e.g.*, *Schlaybach v. Berks Heim Nursing & Rehabilitation*, 839 F. App'x. 759, 760 (3d Cir. 2021) (affirming dismissal of *Monell* claim where Plaintiff did not sufficiently allege that County hospital had a history of providing inadequate care to nursing home residents after they fall or was otherwise indifferent to their post-fall medical needs and failed to allege a pattern of prior incidents evidencing deliberate indifference).

CFG may not be held liable under a theory of *respondeat superior* for individual medical providers' failure to answer sick call slips, and Plaintiff has not sufficiently alleged that this failure occurred as a result of a policy or custom.  Although Plaintiff generally alleges that CFG has provided inadequate medical care and mental healthcare during the COVID-19 pandemic and failed to provide information about COVID-19, he provides no facts to suggest these inadequacies resulted from a policy or custom.  Moreover, Plaintiff provides no facts showing that he suffered any injuries as a result of the failure to answer sick call slips, the denial of medical care and mental healthcare, or the lack of information about COVID-19.  As such, the *Monell* claims are likewise dismissed without prejudice against CFG.

For the reasons explained in this Memorandum and Order, Plaintiff's § 1983 claims against Ellis, CFG, and Hughes are dismissed without prejudice for failure to state a claim for relief pursuant to the Court's screening authority under § 1915(e).  Plaintiff may file an Amended Complaint and a request to reopen this matter within 45 days of the date of this Order to the extent he can cure the deficiencies in the § 1983 claims the Court has dismissed without prejudice.

**IT IS** therefore on this 17th day of November 2022,

**ORDERED** that the Clerk of the Court shall mark this matter as OPEN; and it is further

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (ECF Nos. 1-1, 1-2, 3) is hereby GRANTED; and it is further

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Mercer County Correctional Center; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; i.e., Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing

fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed without prejudice in its entirety for failure to state a claim for relief pursuant to the Court's screening authority under § 1915(e); and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and request to reopen this matter within 45 days to the extent he can cure the deficiencies in his claims for relief; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Order to Plaintiff by regular U.S. mail and CLOSE this matter accordingly.

     _s/Freda L. Wolfson_
     Freda L. Wolfson
     U.S. Chief District Judge